ABRAHAM DIAMOND, Plaintiff, *v.* FRANK TALBOT and JESSIE
TALBOT, Defendants.

Supreme Court, Westchester Special Term, April 21, 1924.

**Vendor and purchaser — specific performance of option, given by agent of undisclosed principal to purchase real estate, as against such principal when disclosed — option contained in lease made by defendant husband — defendant wife, though holding title to real estate, remained silent through negotiations — wife not trustee of property for husband — husband authorized to execute lease and option on behalf of wife pursuant to Real Property Law, § 259 — specific performance granted against both defendants though instrument is under seal.**

Property is not held in trust by a wife for her husband, but rather is owned by the wife pursuant to section 94 of the Real Property Law, where it appears that there is no evidence of a promise by the wife to convey property placed in her name, but bought by the husband who collected the rents and paid the carrying charges, or of such an abuse of her relations with him as would lead, without a writing, to the implication of a trust in his favor.

It is no objection to the granting of specific performance that a more formal contract was contemplated. Specific performance may be decreed of an option on real estate availed of where the option is given by an agent of an undisclosed principal, as against such principal when disclosed.

Accordingly, a judgment will be granted in favor of the plaintiff against both defendants for specific performance of a contract to sell premises to the plaintiff where it appears that the plaintiff, in purchasing the defendant husband's glass business, executed a lease of the premises which contained an option for the purchase of the business plant for $20,000; that the lease was made by the husband, who represented that he owned the premises; that the defendant wife, holding title to the real estate, knew of the negotiations, but remained silent; and that for a long time prior to the trial of the action the defendant husband collected the rents and paid the carrying charges on the property, with the tacit consent of his wife, since the defendant husband was lawfully authorized and empowered to execute the lease and option pursuant to section 259 of the Real Property Law.

Notwithstanding the fact that the option is contained in a lease under seal the defendant wife may sue or be sued on such a contract, though it contains the names of the nominal parties to it, since under section 259 of the Real Property Law there is no legal requirement for a seal.

Action by tenant for specific performance of an option to pur-chase leased property.

*Seacord, Ritchie & Young* (*Albert Ritchie,* of counsel), for the plaintiff.

*Fallon & Fallon* (*Francis X. Fallon,* of counsel), for the defendants.

Taylor, George H. Jr., J.   The equities in this case are, in my opinion, all with the plaintiff.   He purchased the defendant Frank Talbot's glass business as a going concern for $8,000.   As part of the understanding then had, he was to receive a lease of the real estate in which Frank Talbot was conducting the business, together with an option to purchase the said real estate for $20,000 within a certain period.   This understanding was carried out in the lease in evidence containing such option.   The lease was made by Frank Talbot, who represented that he owned the real estate. His wife, in fact, holding the title to the real estate, knew of the negotiations with the plaintiff, was present at intervals during the time the papers were being prepared, and although, in my opinion, under a clear duty to assert to the plaintiff her title to the real estate, remained silent.   She never asserted her ownership of the real estate, although she did intimate that she would not move out of the premises.   With her husband and family she did remove therefrom after the deal was consummated.   I find that she had full knowledge of all those negotiations between her hus-band and the plaintiff, that to a certain extent she took part therein, and that her husband was her duly authorized agent fully empowered to sign the lease containing the option.   Good conscience dictates that the bargain which was then made by the plaintiff should be carried out by both defendants, unless the law of the state, referred to in the learned brief of the defendants' counsel, requires other-wise.   The lot in question was placed in the name of the defendant wife, although purchased with the defendant Frank Talbot's money exclusively.   It was his money also with which the build-ing was erected.   At all times up to the date of the trial, without his wife's protest and with her tacit consent, the defendant Frank Talbot was allowed to take all the rents, to pay all the carrying charges, to use the property as his own and the net proceeds of the rents for his own purposes.   The defendant Jessie Talbot never made any demand upon him for payment for his use of the property

or for any accounting of the rents. The plaintiff's learned counsel urges that she held the property in trust for her husband, that the latter could have compelled her to convey it to him, and that equity, in this action in which husband and wife are parties defendant, should compel that conveyance for the benefit of the plaintiff, so that the defendant Frank Talbot might be in position to convey the property to the plaintiff as, in effect, agreed in the accepted option. I have read with interest that portion of the learned brief of plaintiff's counsel, which is based upon the fine reasoning of Judge Cardozo in *Sinclair* v. *Purdy*, 235 N. Y. 245. I do not think, however, there is any evidence here of a promise by the defendant wife to convey the property to her husband, or of such an abuse of her confidential relation with him as would lead, without a writing, to the implication of a trust in favor of the defendant Frank Talbot, of the real estate in question; and while, as above indicated, his money alone went into the property and he voluntarily placed it in his wife's name merely for her convenience, I have determined that no trust in his favor ever arose or exists. The property belongs to the defendant Jessie Talbot. Real Prop. Law, § 94. The evidence to my mind, however, overwhelmingly supports the conclusion that the defendant husband was lawfully authorized and empowered to execute the lease and the option therein contained, on behalf of the defendant Jessie Talbot. The option has been availed of by the plaintiff and now constitutes the contract between the parties plaintiff and defendant. The plaintiff is entitled to a deed of the property from both defendants, in the form hereinafter indicated, upon payment to the defendant Jessie Talbot of the agreed price of $20,000, unless the form of the option precludes a judgment for the specific performance of the contract created by the plaintiff's notice that he availed himself thereof.

The option reads as follows: " The landlord hereby grants to the tenant the sole option of purchasing the premises hereby demised at any time within a period of two years from April 1, 1922, for the sum of $20,000, of which $5,000 is to be paid in cash on the closing and $500 on the signing of the contract by the landlord; and in the event of such option being exercised the landlord agrees to give a full covenant and warranty deed to said premises."

The defendant husband's authority while ample for the purpose, was not in writing. It was not by law required to be in writing. Real Prop. Law, § 259. The option is, indeed, informal in that while it is definite in stating the purchase price as $20,000, the items of the payments to be made before or on the closing do not aggregate the amount of the full agreed purchase price. Of

course, as pointed out by defendants' counsel, resort may not be had to parol evidence to complete the contract, if it is incomplete. *Kendall* v. *Kendall, No. 1,* 200 App. Div. 702; *Mandel* v. *Guardian Holding Co., Inc.,* Id. 767. I have disregarded all parol evidence taken in a qualified way on the trial, upon this subject. There is no doubt as to the agreement of the parties that the plaintiff should have an option to purchase the property at the price of $20,000. The option accepted by the plaintiff became an agreement on the part of the seller therein and his principal (now disclosed) to sell, and on the part of the purchaser plaintiff to buy the premises. *McLear* v. *Balmat,* 194 App. Div. 827; *Lewis* v. *Bollinger,* 115 Misc. Rep. 221. The purchaser agreed to pay $500 down and $5,000 on closing; his obligation to pay the remaining $14,500 before he received the deed is clearly contained in his agreement to buy the property for $20,000. That clearly was what was intended, although not artistically expressed. It is no objection to the granting of specific performance that a more formal contract was contemplated. *Pelletreau* v. *Brennan,* 113 App. Div. 806. Specific performance may be decreed on an option on real estate availed of where the option is given by an agent of an undisclosed principal, as against such principal when disclosed. Whatever may have been the former state of the law on this subject, I think there can be no doubt about it now. *Ritz* v. *Rubin,* 201 N. Y. Supp. 99; and see *Van Ingen* v. *Belmont,* 121 Misc. Rep. 109; *Shostack* v. *Haskell,* 116 id. 475; *Ressler* v. *Samphimor Holding Corporation,* 201 App. Div. 344; *Briggs* v. *Partridge,* 64 N. Y. 357; *Harris* v. *Shorall,* 230 id. 343; *Lagumis* v. *Gerard,* 116 Misc. Rep. 471. I have not overlooked the circumstance that the instant option is contained in a lease under seal; no seal, however, is required to make the option legally effectual, if it is accepted; subscription is the essential feature. Real Prop. Law, § 259. Section 242 does not apply to contracts of sale. Where a seal is present but not required " its presence does not confine enforcement to the nominal parties." McCook, J., in *Van Ingen* v. *Belmont, supra,* citing *Briggs* v. *Partridge, supra,* and other cases. In one case the parties acted through the medium of a dummy corporation, which signed and sealed the contract there in question, notwithstanding the seal, which was not required by law, all parties acting through the agency of the dummy corporation were held liable just as if they had been parties signatory to the contract. *Ressler* v. *Samphimor Holding Corporation, supra.* Nor am I unmindful of the ancient doctrine asserted as recently as *Case* v. *Case,* 203 N. Y. 263, that only a party to a sealed instrument may sue or be sued thereon. The authorities above discussed, excluding *Case* v. *Case,*

which is not inconsistent with the others, show clearly that undisclosed principals may sue or be sued upon such a contract, if there is no legal requirement of a seal. The suggestion of a very learned former justice (See *Tobias* v. *Lynch*, 192 App. Div. 54, 55) that the principal's name must appear where the agent signs the contract must, I think, yield to the later authorities above cited.

As I have found that authority existed in the defendant Frank Talbot to sign the option on behalf of his wife, and that the accepted option is complete and enforcible against the now disclosed principal, Jessie Talbot, it follows that there must be judgment in favor of the plaintiff against both defendants for specific performance of the contract to sell the premises to the plaintiff for $20,000, which should be paid in cash to the defendant Jessie Talbot, who, in law, to the exclusion of her husband, owns the property. Both defendants will be directed to join in the deed, but as the defendant Frank Talbot was only his wife's agent in the transaction, she alone should be bound by the covenants of title to be inserted in the form of deed required by the terms of the option. The plaintiff should have due credit upon the purchase price for any rent paid by him since the time of his acceptance of the option.

While I believe that the foregoing views are in accordance with the laws of the state and are also consonant with principles of exact justice in the instant case, I realize from the able brief of the defendants' counsel that my conclusion may not be wholly free from doubt. I have studied with care the evidence in the light of his earnest suggestion that whatever the defendant Jessie Talbot may have authorized her husband to do on her behalf in relation to the property, she did not authorize him to sell it, or know of the option. This suggestion I have overruled because I find that there is ample evidence of his general authority to deal with the property in every way on her behalf. I believe further that if the defendants, or either of them, desire to appeal from this determination, then upon such terms as may be found just, there should be a stay of proceedings pending a more authoritative ruling upon the rights of the parties.

Judgment for the plaintiff as indicated, with taxable costs and disbursements against the defendants. Thirty days stay to the defendants and sixty days to make **a** case. Decision signed. Defendants' requests passed upon.

Judgment accordingly.